G. W. Kelso
vs.
D. M. Weston &
Company, Inc.

W. C. A. No. 1431.

March 10, 1933.

WALSH, J. This is a petition under Workmen's Compensation Act brought by G. W. Kelso, employee, against D. M. Weston & Company, Inc., employer, and The Metropolitan Casualty Insurance Company of New York and Lumberman's Mutual Casualty Company. alleged insurers of D. M. Weston & Company, Inc. Answers filed on behalf of the three respondents in general deny all liability. The Commissioner of Labor decided in favor of the respondents and the petitioner took an appeal which is before this Court for decision.

D. M. Weston & Company, Inc., as employer accepted the Workmen's Compensation Act of the State of Rhode Island on June 15, 1927, and such acceptance has never been revoked. On April 2, 1931, there was filed with the Commissioner of Labor a statement by the Federal Mutual Insurance Company, purporting to be effective as of March 30, 1931, that it was carrying Workmen's Compensation Insurance for Weston. This insurance, and apparently prior insurance, had been placed through the office of A. L. Coe as agent for the Federal Mutual Insurance Company.

A. L. Coe, with office in the Hospital Trust Building, was a general agent for Federal Mutual Insurance Company and, later, for Lumberman's Mutual Casualty Company which re-insured the risks of the former Company, which two companies by agreement at the trial of this cause were to be treated as synonymous. C. W. Knibb, doing business as C. W. Knibb Company with office in the Industrial Trust Building, is general agent for The Metropolitan Casualty Insurance Company of New York and other insurance companies. During the years, Mr. Coe, as broker, has placed considerable insurance through Mr. Knibb, as agent, for Mr. Knibb's various companies.

In April or May, 1932, Mr. Coe had some talk with Mr. Knibb in regard to the possibility of Mr. Knibb accept-

ing Workmen's Compensation Insurance on Weston. There was talk about the type of risk involved as well as the desire of Mr. Coe to obtain the insurance at 20% below manual cost, which was the estimated dividend at that time which Weston had been receiving from the Federal Mutual Insurance Company in which his insurance was placed. Mr. Coe told Mr. Knibb that the Lumberman's did not care longer to carry the risk. At that time Mr. Knibb said he would not take the risk below manual and nothing further developed for some time.

On June 15, 1932, the policy of the Lumberman's covering Weston's Workmen's Compensation Insurance terminated and thereafter Mr. Coe carried the risk on a binder with the Lumberman's until he could place it with some other company. He tried to place it with several companies, including particularly Howard Streeter.

On July 25, 1932, Mr. Coe came to Mr. Knibb's office in regard to insurance covering the Spencer Roofing Company. After that had been arranged and renewed through Mr. Coe as broker and Mr. Knibb as agent, Mr. Coe and Mr. Knibb had some conversation in regard to the Weston Compensation Insurance. The net result of that conversation was that Mr. Knibb agreed to place the Weston Compensation Insurance through The Metropolitan Casualty Insurance Company of New York. Mr. Coe brought over to Mr. Knibb's office, either on that day or within a day or so thereafter, the so-called daily reports of the Lumberman's on the Weston risk, which daily reports are in effect a carbon copy of the material portions of the policy which had expired on June 15th.

During the course of the conferences between Mr. Coe and Mr. Knibb on July 25th, or shortly thereafter, at which the placing of the policies was agreed upon, two matters of importance were discussed. The first related

to the experience which the Lumberman's had had on this risk and which Mr. Coe told Mr. Knibb was a loss ratio of only 27%. This, Mr. Knibb stated, was an item of importance as he did not like the risk generally and was desirous of knowing exactly how it had run. The second related to the effective date of the insurance agreed to be placed. There was conversation showing that the Weston risk was being carried on a binder through Mr. Coe. Mr. Knibb agreed to take the insurance at the manual rate. The daily reports above referred to were brought to Mr. Knibb's office by Mr. Coe. At this point the testimony of Mr. Knibb and Mr. Coe diverges.

Mr. Coe's version of the talk in regard to effective date is as follows: He states that he left the daily reports with Mr. Knibb and told Mr. Knibb substantially as follows: "You take it from today. I'll pick up the policy when you have it ready." He also testified that as he was leaving Mr. Knibb's office, he said to Mr. Knibb, in accordance with a well established custom of the business, "You're on and I'm off."

Mr. Knibb's version of the conversation in regard to effective date of policies was that both of them knew that it was being carried on a binder, as they had talked about that. He testified that when Mr. Coe was about to leave the office, Mr. Knibb asked Mr. Coe what about the date of the policies and that Mr. Coe replied that it was being carried on a binder; that the policies could be made up, sent over to him and that he would take up the binder. Mr. Knibb testified that the custom of the insurance business attached to those words the meaning that there was no particular effective date of the policies requested but that the binder could run until the policies were received by the broker.

On July 26, 1932, a serious accident happened to G. W. Kelso while in the

employ of Weston. On July 28, a report of the accident was made out by Miss McMahon, bookkeeper for Weston, and sent to Mr. Coe's office. (Metropolitan's Exhibit 5.)

On July 30, 1932, the policies of insurance of The Metropolitan Casualty Insurance Company of New York, covering the Weston risk, were written, effective July 29, 1932, and on August 1, 1932, a notice to the Commissioner of Labor's office was mailed which was received at the office on August 2, 1933, stating that The Metropolitan Casualty Insurance Company of New York was on this insurance from July 29th. The two Metropolitan policies were sent to Mr. Coe's office, probably by mail, on the day when written, arriving there August 1st.

On August 1st, Miss Hannaway, a policy clerk in Mr. Coe's office, telephoned Miss Davis, a similar clerk in Mr. Knibb's office, and stated that the policies were wrongly dated as of July 29th and that they should have been as of July 25th. Miss Hannaway testified that Miss Davis told her to change the date of the policies by erasure but that she refused. Miss Davis testified that she stated she had no authority in the matter but would take the question up with Mr. Knibb. By letter dated August 1st the two policies were returned to Mr. Knibb's office, the letter stating that in accordance with telephone conversation they were being returned and that they should be effective July 25th and not the 29th, as written.

On August 2nd the above letter from Mr. Coe to C. W. Knibb Company and the policies were received by Mr. Knibb. On the same date the Claim Department of The Metropolitan Casualty Insurance Company of New York, which occupies the same general offices as Mr. Knibb, received from Mr. Coe's office the report of the accident of Kelso on July 26th, the report being dated July 28th, on the

standard form of the Lumberman's but with the Metropolitan name typed in at the top. (Metropolitan's Exhibit 4.)

On August 24th, there was received at the office of the Commissioner of Labor a statement from the Lumberman's dated August 3rd, stating that they were off the Weston risk, effective July 25th, 1932.

Some time after the policies were returned by Mr. Coe to Mr. Knibb's office. They again went back into Mr. Coe's possession and remained there until September 22, 1932.

There were numerous telephone conversations and conferences between Mr. Coe and Mr. Knibb from around August 1st up to September 27th. On one of these occasions both of them went to the Rhode Island Hospital to see what Kelso's condition was. Mr. Coe states that on all of these conferences and telephone conversations Mr. Knibb agreed to accept liability for the accident to Kelso. Mr. Knibb states that at none of them did he agree to accept such liability but that he did repeatedly state to Mr. Coe that if it were a question of Coe personally losing his position or otherwise losing by the transaction, he would certainly do all he could with The Metropolitan Casualty Insurance Company of New York to have them assume the liability for the accident as a matter of good business judgment.

Mr. Coe and three persons in his office testified that on the morning of September 20th they all listened in on a conversation between Mr. Coe and Mr. Knibb, and that Mr. Knibb at that time stated that his company accepted responsibility for the accident and that Mr. Aldrich was negotiating with Mr. McCarthy, attorney for Kelso. Mr. Knibb testified that, while he had telephone conversations with Mr. Coe during that general period, he never made any such statement and that, particularly, on the morning of September

20th he was in Springfield Massachusetts, because a race horse belonging to him had raced there the day before, on Governor's Day, had been injured, and that he went back the next morning to see about the injuries and did not get into his office until two o'clock or so. In this Mr. Knibb is not corroborated.

On September 23, 1932, Mr. Coe brought the two Metropolitan policies back to Mr. Knibb's office, gave them to Miss Barrett and stated that he was returning them for cancellation in accordance with the advice of counsel. At his request he was given a receipt for the policies. (Lumberman's Exhibit 10.)

Thereafter all the parties agreed it was best to have Mr. McCarthy file a petition against Weston and the two insurance companies and have the whole matter determined in one case, and this procedure was followed.

The evidence is uncontradicted and the parties virtually agree that G. W. Kelso did suffer an injury, arising out of and in the course of his employment with Weston, on July 26, 1932, and that as a result thereof he is entitled to recover from whatever party or parties responsible under the Workmen's Compensation Act. It is uncontradicted that his average weekly wages at the time of the accident were $11.06, and that he would be entitled to a minimum payment of $7.00 a week for total incapacity up ot February 15, 1933, the date of trial, totalling $203.00. The Rhode Island Hospital is entitled to be paid a hospital bill of $176.50. Dr. Barrows is entitled to the maximum fee, covering an operation, of $150.00.

There was no issue raised at the trial in regard to the liability of D. M. Weston & Company, Inc., to Kelso and that, accordingly, was eliminated as a contested issue.

The contested issues related to the liability of The Metropolitan Casualty Insurance Copmany of New York and Lumberman's Mutual Casualty Company to Kelso. These depend upon the existence of insurance of these companies with Weston on July 26th, 1932, the date of the accident.

Article V of Chapter 92 of the General Laws of Rhode Island 1923, known as the Workmen's Compensation Act, regulates insurance against liability to pay Workmen's Compensation. Section 10 thereof reads as follows:

"Every insurance company having written a policy insuring against liability for personal injuries to employees shall immediately notify the Commissioner of Labor of the issuance of such a policy upon forms to be provided by the Commissioner of Labor. Upon the cancellation of such policy or failure to renew the same every insurance company having written such policy shall immediately notify the said Commissioner of such cancellation or failure to renew."

Accordingly, at the Commissioner of Labor's office, on July 26, 1932, the Lumberman's Mutual Casualty Company was insurer on the Weston risk. Thereafter, on August 4, 1932, the Lumberman's filed a notice dated August 3, 1932, by which they purported to cancel their insurance for Weston as of July 25, 1932.

It seems clear that such cancellation can be effective only as of the date filed with the Commissioner of labor, or at least the previous day, thus giving time for the filing.

Applying this law, it is clear that Lumberman's Mutual Casualty Company, by a continuing representation in the office of the Commissioner of Labor, still effective on July 26, 1932, and for a week thereafter, cannot now deny that it was covering the risk at the time Kelso was injured on July 26, 1932.

The undisputed evidence is that after June 15, 1932, Coe as agent of Lumbermans' Mutual Casualty Company,

continued to carry the Weston Workmen's Compensation Insurance on a binder and that this binder was still effective by his own admission as late as September 27, 1932.

Accordingly, there would seem to be no question in this case but what Lumberman's Mutual Casualty Company was an insurer of D. M. Weston & Company, Inc., covering Workmen's Compensation on July 26, 1932, and therefore responsible, either alone or in conjunction with others, to G. W. Kelso for the accident which happened on that date.

It is conceded that Mr. Knibb on behalf of The Metropolitan Casualty Insurance Company of New York could have bound that company by an oral contract of insurance on July 25, 1932, effective from that date onward, if he had actually purported so to do.

See *Fliger* vs. *Pennsylvania Fire Ins. Co.*, 48 R. I. 274 (1927).

There is no question but that Mr. Knibb made an oral contract for insurance of this risk on behalf of the Metropolitan Casualty Company of New York. After the receipt of the risk sheets and after he had information of the happening of the injury to Kelso and when, presumably at least, he was in full possession of all the facts of the present case, including the alleged deceit and sharp practice of Coe, in September, 1929, according to his own testimony, he tried to persuade the Vice President of the Metropolitan Casualty Company to accept the Weston risk. Mr. Aldrich, the adjuster for Metropolitan, made an investigation of the Kelso case, despite the claim of his company that it did not cover the case. The telephone conversation with Coe, in which Coe claimed Knibb specifically agreed to cover Weston from July 25, 1929, in which testimony Coe was corroborated by three of his office force who were listening in, was not expressly denied by Knibb, his answer thereto being that

he was in Springfield, Mass., on the morning in question.

On the other hand, the testimony of Coe and other witnesses for the Lumberman's does not strike us to be wholly free from some exaggeration in spots. For instance, on the day that Coe says the agreement to insure was made by Knibb, Coe went to Knibb's office on the Spencer Roofing policies, not on Weston, yet Coe had been carrying Weston on a binder with the Lumberman's for about forty days at that time. Coe knew of this accident to Kelso on July 28th or July 29th but it is significant that Knibb did not know about it on July 30th when the policy was written by Metropolitan. With the knowledge of an accident on July 26th, Coe did not take up the matter of change of date in the policy with Mr. Knibb presonally, but directed clerks in his office to transact the matter.

At various other places in the testimony on the part of Lumberman's, inconsistencies appear which it is unnecessary to mention here.

Kelso is entitled to relief under the Workmen's Compensation Act and must not be prejudiced by a disagreement between insurance companies. Taking into consideration all of the testimony, it seems to us to be fair and equitable to require that each of these insurance companies be held liable as co-insurers and that each be required to pay one-half of the total liability in the case.

For petitioner: Roger L. McCarthy.

For respondent: Clifford A. Kingsley.